UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TAMMY SHIVE-AYALA,

    Plaintiff,

vs.

WAYNE PACELLE, MARTY IRBY, and
ANIMAL WELLNESS ACTION
FOUNDATION,

    Defendants.

Case No. 21-cv-00704

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS
UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**

## INTRODUCTION

The central fact of this case is simple: the allegedly defamatory statements that underlie Tammy Shive-Ayala's suit are taken directly from her own repeated admissions of her involvement in cockfighting, made in the videos linked in the Investigative Report and otherwise reported in the materials of record. Shive-Ayala makes it clear in the videos and in her recently filed declaration that her business is selling birds to people engaged in cockfighting. Despite her own words, Shive-Ayala and her counsel continue pursuing the factually baseless idea that Defendants somehow defamed her by pointing out these realities in their Investigative Report. This is a meritless lawsuit, one that never should have been filed. The time to end it is now, with a strong admonition to Plaintiff and her counsel, through entry of sanctions, that this Court will not be used as a cudgel for harassment.

## ARGUMENT

**I. THE CONTROLLING LEGAL STANDARD UNDER FED. R. CIV. P. 11(B)(3) REQUIRES AN INQUIRY REASONABLE UNDER THE CIRCUMSTANCES.**

Shive-Ayala and her counsel violated Fed. R. Civ. P. 11(b)(3) by filing this case. That rule states that an attorney or an unrepresented party certifies to the court that "the **factual contentions** [in a pleading, written motion, or other paper] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." (*See* Dkt. 16 at p.7; emphasis added.) Rule 11 requires reasonableness, judged by an objective standard. *See Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19, 23 (D.D.C. 2004). Counsel must conduct some prefiling inquiry into both **the facts** and the law to satisfy the affirmative duty imposed by the rule. Sanctions are warranted when the claimant exhibits "deliberate indifference to obvious facts." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (internal quotes omitted). Considering the basis for her defamation claim is an Investigative Report that rests on Shive-Ayala's own statements, and that information was publicly available to counsel and obviously known by Shive-Ayala prior to litigation, it is not hard to conclude that there was no inquiry, let alone a reasonable one, before filing suit.

**II. SHIVE-AYALA ASSERTS A DEFAMATION CLAIM BASED ON DEFENDANTS CALLING ATTENTION TO PLAINTIFF'S OWN REPEATED ADMISSIONS TO HER SUCCESS IN COCKFIGHTING AND THE BREEDING OF BIRDS FOR USE IN COCKFIGHTING OUTSIDE THE UNITED STATES.**

Tammy Shive-Ayala is famous in the world of cockfighting. She is a well-known breeder because her birds continue to win. As she admits, cockfighting birds are "typically bred and raised for the purpose … [of] combat in a pit." (Shive-Ayala Decl. ¶ 3.) In response to this motion, Shive-Ayala even claims she "breed[s] birds for genetic improvement" and "look[s] for qualities that are intended to make the offspring of [her] birds top tier contenders in cockfighting." (*Id*. at ¶ 11; Dkt. 18 at p. 1.) As the record demonstrates, she has further boasted about her success in numerous

2

interviews with cockfighting publications, posted photos with her many trophies, and is tagged in Facebook posts showing her involvement with such successes. This is all information that Plaintiff knows, has knowingly broadcasted in public spheres in the recent past, and that her lawyer should have known before filing this lawsuit.

Counsel should be sanctioned for bringing this suit because Plaintiff is claiming her own words are defamatory. The Press Release and Investigative Report alone produced enough information to support that Plaintiff could never succeed on her defamation claim even before Defendants conducted a basic Internet search to find Plaintiff's self-incriminating interviews. Indeed, conducting a simple search, such as typing the Plaintiff's name into Google, would have produced the same results the Defendants relied on in the Investigative Report and that support this motion and the dispositive motions previously filed by the Defendants.

Defendants call attention to Shive-Ayala's own words, behaviors, and accomplishments in the cockfighting world because those facts are inconsistent with the idea that Defendants defamed her by publishing the Investigative Report. Shive-Ayala's attempt to whitewash her frequent media appearances and her specific words and actions is nonsensical. [Dkt. 18, Section A.] If she was just breeding birds "for genetic improvement," she would not have numerous trophies. There are no trophies for breeding roosters. There is no "sport" of breeding roosters for genetic improvement. Cockfighting is a sport. And when she speaks about her business, she is speaking about her involvement in the sport, **not** her work as a breeder. (SMF ¶¶ 78, 87, 93, 109 [Dkt. 9].)

Not only should counsel be sanctioned for bringing this suit, Shive-Ayala should also be sanctioned because she is simply using this Court for political gain as she has tied this lawsuit to her political ideology on animal fighting. *See Saltany v. Reagan*, 886 F.2d 438, 440 (D.C. Cir. 1989) (pursing litigation purely on political objectives can violate Rule 11). Shive-Ayala continues

to use this Court as a political tool, even after receiving Defendants' motion to dismiss **and** a Rule 11 Safe Harbor submission suggesting that the case be dismissed. Indeed, Shive-Ayala has long expressed her political opinions on the laws surrounding cockfighting in the United States. For example, her statements to *Tukaan* urging viewers to oppose legislation that would make cockfighting illegal (SMF ¶ 88 [Dkt. 9 at p. 15]), and her statement to *Purebred Warrior* that the American game fowl industry was "lost" when the last state made cockfighting illegal (SMF ¶ 93 [Dkt. 9 at p. 16]), demonstrates her acute awareness of her role as a self-declared spokesperson for the cockfighting industry.

The Court has ample authority to hold the Plaintiff herself accountable—not just her lawyer. Shive-Ayala has now declared under oath that her five lines of breeding birds, including her Radios, are "never actually entered into a fighting pit" (Shive-Ayala Decl. ¶ 20) and that "fighting birds are hybrid birds" (*Id*. at ¶ 18). But this flatly contradicts her 2017 BNTV interview where she had the following exchange on camera:

> Q:  Would you suggest we breed the Radios also, or Sweaters back home?
>
> A:  Oh absolutely, yeah. The Radio is not a big seller because the Radio has never been really pretty. They're not the real beautiful bird to look at. They've got kinda a big head, short feathers, but they are excellent cutters.
>
> Q:  Do they break?
>
> A:  They do break. They are breakers and cutters.

(SMF ¶¶ 103-05 [Dkt. 9 at p. 19].)  Nowhere has Shive-Ayala contested these statements and she is stuck with them on this motion, which directly contradict what she has said under oath.

Similarly, in her 2019 *Purebred Warrior* interview article she was asked: "What are bloodlines you possess that are highly competitive in long knife style of fighting?" in which she responded: "The bloodlines we have are Sweater, Radio, Yellow-legged hatch, Kelso, Bates Hatch,

Leiper Hatch, and Manzel Grey." (SMF ¶ 95 [Dkt. 9 at p. 17].) Similarly, she attested that she "raise[s] pure bred birds. For a bird to be considered pure it must be line-bred and in-bred on both the rooster and hen sides." (Shive-Ayala Decl. ¶ 10.) But in the same *Purebred Warrior* interview, she stated: "Now we raise somewhere around 1000 stags per season 500 pure, 500 crosses that's penned numbers, so we usually hatch around 2500" and "My favourite [*sic*] cross is 1/2 Radio 1/4 Sweater 1/4 Kelso for the Philippines."

While Shive-Ayala declared that she "has not sponsored or fought a bird in a cockfight since 2007" (Shive-Ayala Decl. ¶ 6), the record of her own statements —**which Plaintiff has failed to contest** —amply demonstrates that is a falsehood. Three Filipino publications, *The Standard*, *The Philippines Star*, and *The Manilla Bulletin*, published stories about Shive-Ayala stating: "Highly respected American lady game fowl breeder Tammy Shive of Green River Farm in Kentucky is all set for the upcoming **2016** World Slasher Cup-2 with her partner Pao Malvar of Sunhaven Gamefarm in Tarlac. Together, **they** will pit **their** entries using Shive[-Ayala]'s famed Sweaters." (SMF ¶¶ 107-11; emphases added.) She could have specified in her statement that she has not fought birds in a cockfight **in the United States** since 2007, but she did not. Her prior public statements render her declaration here of limited evidentiary value on the record before the Court.

## CONCLUSION

Based on the foregoing, Defendants Wayne Pacelle, Marty Irby, and Animal Wellness Action (improperly designated in the caption as Animal Wellness Action Foundation) ask the Court, under Federal Rule of Civil Procedure 11, to sanction Tammy Shive-Ayala and the law firm of McFadden & Shoreman, LLC by dismissing this lawsuit and awarding Defendants their attorneys' fees and costs in defending this case or alternatively order Plaintiff and her counsel to show cause why their conduct does not violate Federal Rule of Civil Procedure 11(b)(3).

Dated this 12th day of November, 2021.

/s/ *Joseph S. Goode*
Joseph S. Goode
Mark M. Leitner
LAFFEY, LEITNER & GOODE LLC
325 E. Chicago Street
Suite 200
Milwaukee, WI 53202
(414) 312-7003 (telephone)
(414) 755-7089 (facsimile)
jgoode@llgmke.com
mleitner@llgmke.com

*Attorneys for Defendants Wayne Pacelle, Marty Irby, and Animal Wellness Action Foundation*

Hal J. Perloff
HUSCH BLACKWELL, LLP
750 17th Street, NW
Suite 900
Washington, DC 20006-4675
(202) 378-2300 (telephone)
(202) 378-2319 (facsimile)
hal.perloff@huschblackwell.com