UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAMMY SHIVE-AYALA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 21-704 (RJL) |
| | ) |
| PACELLE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**
(March 15, 2022) [Dkts. #9, 16]

Plaintiff Tammy Shive-Ayala ("plaintiff" or "Shive-Ayala") raises pure-bred fowl for sale. After defendants Wayne Pacelle, Marty Irby, and Animal Wellness Action (collectively, "defendants" or "Animal Wellness Action")—an animal-welfare organization based in Washington, D.C. that seeks to prevent cruelty to animals—released an investigative report describing the alleged involvement of several Kentucky-based rooster breeders, including Shive-Ayala, in cockfighting, Shive-Ayala filed a one-count defamation suit. *See* Complaint ("Compl.") [Dkt. #1]. Defendants now move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* Defs.' Mot. to Dismiss ("MTD") [Dkt. #9]. Because plaintiff fails to allege any facts showing that defendants acted with actual malice, the Motion to Dismiss is GRANTED.

1

## BACKGROUND

### A. Factual Background

Shive-Ayala raises pure-bred fowl for sale "both domestically and internationally." Compl. at ¶ 2; *see also* Pl.'s Response to Mot. for Sanctions ("Opp. to Sanctions") [Dkt. #18] at 7 (noting that plaintiff sells birds "to the Philippines, Guam, Mexico, [and] Vietnam"). According to plaintiff, she "sell[s] [her] birds to the Philippines so that" the "offspring" of her birds may "be entered in cockfighting." Decl. of Shive-Ayala in Support of Opp. to Sanctions ("Decl. of Shive-Ayala") [Dkt. #18-3] at ¶ 12. She admits that she has been "involved in the sport for about 30, 31 years" and that her farm is "one of the top sources of breeding stocks by Filipino sportsmen." Opp. to Sanctions at 7–8. Specifically, plaintiff "breed[s] birds for genetic improvement" and "look[s] for qualities that are intended to make the offspring of [her] birds top tier contenders in cockfighting." Decl. of Shive-Ayala at ¶ 11; *see also* Compl. at ¶ 2. Among her approximately 1200–1600 "gamefowls," Opp. to Sanctions at 8, she "maintain[s] five pure blood lines," Decl. of Shive-Ayala at ¶¶ 9–10.

On August 6, 2020, Animal Wellness Action held a press conference and issued a press release and report discussing its investigation into the activities of seven Kentucky breeders. *See* Compl. at ¶¶ 9, 11–12. Plaintiff alleges that, at the press conference, Animal Wellness Action "stated as a matter of fact that [the seven Kentucky breeders] are in violation of federal law." Compl. at ¶ 9. The press release explains that the breeders "appear to be deeply involved in illegal trafficking of fighting animals, with most of them sending birds to far-flung destinations across the world including the Philippines, Mexico,

and Honduras." Ex. A to Decl. of Scott Edwards, Press Release ("Press Release") [Dkt. #9-2 at 25–29] at 2. The investigative report provides additional details about the identified individuals, who "are suspected of collectively selling tens of thousands of fighting animals a year to other jurisdictions." Ex. B to Decl. of Scott Edwards, Investigative Special Report ("Report") [Dkt. #9-2 at 31–62] at 2; *see also* Compl. at ¶ 9. The four-page individual profile of Shive-Ayala provides a satellite view of her property and depicts a magazine cover highlighting her and her farm's birds. Report at 21–22. It also includes screenshots of, and links to, videos of interviews in which Shive-Ayala has participated, as well as her quoted statements from the interviews. Report at 23–24; *see, e.g.*, Report at 24 ("I've been involved in the sport for 31 years.").

**B. Procedural Background**

On March 16, 2021, plaintiff filed this suit, alleging one count of defamation under D.C. law. *See* Compl. at 4–6. Plaintiff alleges that defendants made "false and defamatory statements," including that she "is engaged in an illegal trade in violation of the [Animal Welfare Act, 7 U.S.C. § 2131 *et seq.*]" and has "committed a series of felonies involving animal abuse and cruelty." Compl. at ¶ 21. She seeks (1) consequential and reputational damages; (2) punitive damages; (3) attorney's fees and costs; and (4) other appropriate relief. Compl. at 6. Defendants moved to dismiss Shive-Ayala's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment. *See* MTD.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Id.* When resolving a Rule 12(b)(6) motion to dismiss, the Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014).

In addition to a complaint's factual allegations, the Court may consider "documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim." *Econ. Rsch. Servs., Inc. v. Resolution Econs., LLC*, 208 F. Supp. 3d 219, 227 (D.D.C. 2016) (quoting *Harris v. Amalgamated Transit Union Loc. 689*, 825 F. Supp. 2d 82, 85 (D.D.C. 2011)).

## ANALYSIS

Defendants argue that plaintiff is a limited-purpose public figure in the controversy over cockfighting. MTD at 21–22. As a limited-purpose public figure, defendants contend, plaintiff is required to allege facts showing that defendants acted with "actual malice" to survive a motion to dismiss her defamation claim. MTD at 19–20. Because the Complaint

4

fails to do so, defendants assert that it must be dismissed. MTD at 30–31. Shive-Ayala disagrees at the first step, denying that she is a limited-purpose "public figure because she has not played a significant role in the controversy." Pl.'s Response to MTD ("Opp. to MTD") [Dkt. #12] at 8. In her view, she need only allege that defendants acted negligently. Opp. to MTD at 10. Unfortunately for plaintiff, the Complaint and incorporated materials belie her position.[1]

### A. Defamation Claim by a Limited-Purpose Public Figure

To state a claim for defamation under D.C. law, a plaintiff must allege: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the

---

[1] As an initial matter, there is some dispute by the parties over which documents the Court should consider in deciding the Motion to Dismiss. Defendants assert that the Court may evaluate "materials extrinsic to a complaint," including both those "documents upon which the plaintiff's complaint necessarily relies" and other "public record information." MTD at 4–5 (citations omitted). They also invite the Court to "convert [their] motion into one for summary judgment" if it does "not believe" certain materials "are appropriate for judicial notice." MTD at 5. Plaintiff confirms that "the press release, investigative report, and the two embedded video hyperlinks [in the Report] are clearly central to [her] defamation claim," and therefore may be properly considered by the Court at the motion-to-dismiss stage. Opp. to MTD at 4–5. I agree with both parties that the materials referenced in the Complaint may be considered. *See generally Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ("documents ... appended to [a defendant's] motion to dismiss and whose authenticity is not disputed ... may be considered here because they are referred to in the complaint and are integral to" the plaintiff's claim).

Plaintiff further asserts that "[t]he Court should not consider" additional articles referred to by defendants in their Motion to Dismiss, "including a *Purebred Warrior* interview article from September 6, 2019 and three Philippine news articles from *The Standard* published on May 20, 2016, *The Philippines Star* published an article on May 20, 2016, and the *Manila Bulletin*, published on May 23, 2016." Opp. to MTD at 5; *see also* MTD at 16–19. But she admits that the Court may consider the articles "without converting Defendants' motion into a motion for summary judgment." Opp. to MTD at 5. Given plaintiff's concession and the fact that the additional documents not referenced in the Complaint are publicly available news articles, the Court declines to convert the motion into a motion for summary judgment. *See, e.g., Ryan-White v. Blank*, 922 F. Supp. 2d 19, 22 (D.D.C. 2013) ("The decision to convert a motion to dismiss into a motion for summary judgment is committed to the sound discretion of the trial court."). The Court further takes judicial notice of the additional articles for their existence. *See Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (taking judicial notice of the existence of newspaper articles that publicized certain events); *see also, e.g., Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 132 n.1 (D.D.C. 2016) (taking judicial notice of "news articles ... not for their truth but merely for the fact they were published" and granting motion to dismiss).

defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (3) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140–41 (D.D.C. 2017) (quoting *Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009)). "A statement is 'defamatory' if it tends to injure the plaintiff in h[er] trade, profession or community standing, or to lower h[er] in the estimation of the community." *Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013). "A defendant's statements must also be shown to be false by a preponderance of the evidence—truth is a complete defense to defamation." *Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994).

Where a plaintiff is a "public figure," the third element of the defamation claim requires that she "'demonstrate by clear and convincing evidence that the defendant published the defamatory falsehood with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Deripaska*, 282 F. Supp. 3d at 141 (quoting *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.3d 1287, 1292 (D.C. Cir. 1988) (internal citations omitted)). Specifically, a plaintiff must show that when the defendant published the statement, the defendant was "subjectively aware that it was highly probable that the story was '(1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that [the defendant] has obvious reasons to doubt.'" *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218 (D.D.C. 2012) (quoting *Lohrenz*

v. *Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003)); *see also Couch v. Verizon Comm'cns, Inc.*, 2021 WL 4476698, at *3 (D.D.C. Sept. 30, 2021).

A plaintiff may be "a public figure for all purposes," or a limited-purpose public figure. *Waldbaum v. Fairchild Pubs., Inc.*, 627 F.2d 1287, 1294, 1296 (D.C. Cir. 1980). A "limited-purpose public figure is 'an individual (who) voluntarily injects h[er]self or is drawn into a particular public controversy and therefore becomes a public figure for a limited range of issues.'" *Id.* at 1296 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). "[T]hose who assume[] the risk of publicity and ha[ve] access to channels of communication to defend themselves" are public figures, while "those who d[o] not" are private figures. *Lohrenz*, 350 F.3d at 1279 (citing *Gertz*, 418 U.S. at 345). Whether a plaintiff is a limited-purpose "public figure is a matter of law for the court to decide." *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987). In our Circuit, courts use a three-part test to determine whether a plaintiff is a limited-purpose public figure. "First, the court must identify the relevant controversy and determine whether it is a public controversy. Second, the plaintiff must have played a significant role in that controversy. Third, the defamatory statement must be germane to the plaintiff's participation in the controversy." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 585 (D.C. Cir. 2016) (citations omitted); *see Waldbaum*, 627 F.2d at 1296–98.

Defendants argue that Shive-Ayala is a "limited-purpose public figure." MTD at 21–22. They assert that all three parts of that test are satisfied: (1) cockfighting is the subject of "a broad public controversy," MTD at 22; (2) "Shive-Ayala has sought and established a prominent place in the public discussion of cockfighting," MTD at 27; and

7

(3) the "statements are based directly on Shive-Ayala's own repeated admissions of her involvement in cockfighting," MTD at 30.  In her opposition brief, plaintiff disputes only the second part, claiming that she "is not [a] limited purpose public figure because she has not played a significant role in the controversy." Opp. to MTD at 8.  Because plaintiff does not challenge defendants' assertion that the first and third parts of the inquiry are met, the Court treats those arguments as conceded. *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Unfortunately for plaintiff, the Court agrees with defendants that the second part of the inquiry is also satisfied.  To evaluate whether a plaintiff has played a significant role in the public controversy, courts "look to the plaintiff's past conduct, the extent of press coverage, and the public reaction to [her] conduct or statements." *Lohrenz*, 350 F.3d at 1279.  The plaintiff must be more than a "mere[] ... ordinary civic participant," and instead "'purposely try[] to influence the outcome'" of the controversy or be "'realistically ... expected, because of h[er] position in the controversy, to have an impact on its resolution.'" *Jankovic*, 822 F.3d at 587 (quoting *Waldbaum*, 627 F.2d at 1297).  In other words, the plaintiff must have "'thrust' h[er]self to the 'forefront' of the public controversy at issue." *Id.* at 586 (quoting *Waldbaum*, 627 F.2d at 1297).

Shive-Ayala is a well-known, long-established breeder who has been the subject of—and willingly participated in—repeated media coverage, including the interviews and videos referenced in the Complaint and defendants' Report.  These publications

demonstrate that plaintiff has received attention from media outlets that cover the Filipino cockfighting industry. For example, in one of the media videos that is highlighted by the Report, the narrator from BNTV—a Philippines-based broadcast company that covers cockfighting—introduces Shive-Ayala by noting that her farm is "really famous in the Philippines," and explaining that there is no need "to introduce [plaintiff] to the audience." IR Video 1 (Notice of Filing [Dkt. #9-3] at 1), BNTV. The existence of the additional materials referenced by defendants confirms Shive-Ayala's status as the subject of ongoing media attention by cockfighting publications abroad. *See, e.g.*, Ex. E to Decl. of Scott Edwards, *The Standard* (May 20, 2016) [Dkt. #9-2 at 83]; Ex. A-1 to Decl. of Joseph S. Goode, Interview, *Purebred Warrior* (Sept. 6, 2019) [Dkt. #9-2 at 105–18]; Ex. B to Decl. of Joseph S. Goode, *Philippine Star* (May 20, 2016) [Dkt. #9-2 at 126–37]; Ex. C to Decl. of Joseph S. Goode, *Manila Bulletin* (May 23, 2016) [Dkt. #9-2 at 139]; Google Video 2 (Notice of Filing [Dkt. #9-3] at 2), Daily Motion; *see also* MTD at 16–19; Opp. at 5. Shive-Ayala's repeated media appearances distinguish her from the plaintiff in *Gertz*, where the Supreme Court held that the plaintiff was not a limited-purpose public figure because his alleged participation in the relevant controversy "related solely to his representation of a private client" and "he *never* discussed either the criminal or civil litigation with the press." 418 U.S. at 352 (emphasis added); *see also Lohrenz*, 350 F.3d at 1279 (courts look to, among other things, "the extent of press coverage" to evaluate the significance of the plaintiff's role).

Plaintiff has embraced media coverage as an opportunity not only to advertise her fowl, but also to speak to the merits of and her involvement in the sport of cockfighting.

9

*See* IR Video 1 (Notice of Filing [Dkt. #9-3] at 1), BNTV (naming the main bloodlines of her birds); IR Video 3 (Notice of Filing [Dkt. #9-3] at 1), Tukaan Live (stating that "[i]t's a wonderful sport" and encouraging viewers to "put those laws in the books that let you keep going with this great sport and heritage that we all love so much … [d]on't let them, the bad people that want[] … to kill this sport, don't let them change it"). Like the corporate-executive plaintiff in *Waldbaum*, who "project[ed] his own image and that of the cooperative far beyond the dollars and cents aspects of marketing," 627 F.2d at 1300, Shive-Ayala has treated media attention as an avenue for advocacy—not merely an advertising campaign to sell her birds. *See* IR Video 3 (Notice of Filing [Dkt. #9-3] at 1), Tukaan Live; *see also* Ex. A-1 to Decl. of Joseph S. Goode, Interview, *Purebred Warrior* (Sept. 6, 2019) [Dkt. #9-2 at 105–18] at 108 ("In my personal opinion, we've lost the Gamefowl industry when we lost the last legal state for Cockfighting. Sometimes we take for granted our freedoms and become complacent with the status of bills and the implications of the growing laws.").

These media reports establish that Shive-Ayala has "assumed the risk of publicity and ha[s] access to channels of communication to defend [herself]." *Lohrenz*, 350 F.3d at 1279 (citing *Gertz*, 418 U.S. at 345). Her position in the cockfighting debate is far from that of "an ordinary civic participant"; rather, she seeks to "influence the outcome" of the controversy by advocating for the merits of the sport. *Jankovic*, 822 F.3d at 587. Through her media participation, she "voluntarily draws attention to h[er]self" and "uses h[er] position in the controversy as a fulcrum to create public discussion." *Clyburn v. News*

*World Comm'cns, Inc.*, 903 F.2d 29, 32 (D.C. Cir. 1990) (internal quotation marks and alteration omitted). Not surprising, after all, since it is her chosen way to make a living!

### B. Actual Malice

Because Shive-Ayala is a limited-purpose public figure, she must allege actual malice by defendants to state a claim of defamation. *Lohrenz*, 350 F.3d at 1282–83. To show actual malice, "the court must be able to find that there is clear and convincing evidence 'to permit the conclusion that [defendants] in fact entertained a serious doubt as to the truth of [their] publication.'" *Id.* at 1283 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)); *see also St. Amant*, 390 U.S. at 732 (actual malice may be established by proof that the "story [was] fabricated by the defendant, or [was] the product of his imagination").

Plaintiff does not argue that her Complaint sufficiently alleged actual malice—only that no such allegations were required. *See* Opp. at 10–11. This approach is unsurprising given that the Complaint contains *no* facts that show, or from which the Court can infer, actual malice by defendants. Nor does plaintiff dispute her own statements in various media publications, which defendants repeated in their Report; to the contrary, she affirms and relies upon these statements. Opp. to MTD at 2–3, 5, 7, 11. Plaintiff fails to provide the Court with any factual basis from which to draw a reasonable inference that defendants "entertained a serious doubt as to the truth of" their statements based on these undisputed materials. In short, the Complaint makes only threadbare and conclusory allegations as to defendants' intent that recite the elements of the claim, *see* Compl. at ¶¶ 23–24, and offers "*no* factual allegations … suggesting that [defendants] either fabricated the" statement or

11

that it "was so improbable that only a reckless person would have circulated the story," *Parisi*, 845 F. Supp. 2d at 218–19. *See also Arpaio v. Zucker*, 414 F. Supp. 3d 84, 91 (D.D.C. 2019) ("a '[t]hreadbare recital[]' of the definition of actual malice" does not suffice). Plaintiff's allegations are insufficient to survive a motion to dismiss.[2] *Ashcroft*, 556 U.S. at 678; *Deripaska*, 282 F. Supp. 3d at 143.

## CONCLUSION

For all of the foregoing reasons, defendants' Motion to Dismiss [Dkt. # 9] for failure to state a claim is hereby GRANTED and plaintiff's Complaint is DISMISSED. Further, defendants' Motion for Sanctions [Dkt. #16] is hereby DENIED. An order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

---

[2] After the parties completed briefing on the Motion to Dismiss, defendants moved for sanctions against plaintiff and her counsel under Federal Rule of Civil Procedure 11. *See* Mot. for Order to Show Cause and for Sanctions Pursuant to Rule 11 ("Mot. for Sanctions") [Dkt. #16]. Although I agree with defendants that plaintiff's Complaint must be dismissed for failure to state a claim, I decline defendants' request that the Court sanction plaintiff and her counsel under Rule 11(b)(3). *See* Mot. for Sanctions.

I am not persuaded that the filing of the Complaint is "so incredible as to warrant sanctions." *Footbridge Ltd. Tr. v. Zhang*, 358 F. App'x 189, 191 (D.C. Cir. 2009). "The imposition of Rule 11 sanctions is not something the court takes lightly; Rule 11 sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings." *Naegele v. Albers*, 355 F. Supp. 2d 129, 144 (D.D.C. 2005). Failure to plead a claim "does not ipso facto violate the standards of Rule 11." *Id.* (citation omitted). To be sure, there are serious pleading deficiencies that require this case to be dismissed. And the plaintiff's repeated affirmation of her statements admitting her historical and current involvement in and connection to the cockfighting industry raises serious questions about the merits of her claim. *See, e.g.*, Opp. to MTD at 2–3, 5, 7, 11; Opp. to Sanctions at 2, 7–8. But to award sanctions in this case based on a finding that the factual contentions underlying plaintiff's claim that defendants made defamatory statements that she is engaged in illegal activity are entirely frivolous would be inconsistent with the resolution of this case at a very early stage without any occasion for discovery or factual findings. *See generally Betz v. Global Telesourcing, LLC*, 2021 WL 5865384, at *4 (D.D.C. Dec. 10, 2021) (explaining relevance of the procedural posture of the case to the Court's decision whether to order sanctions); *Gonzalez Ramos v. ADR Vantage, Inc.*, 2021 WL 4462411, at *1 (D.D.C. Sept. 29, 2021) (declining to order sanctions where "[t]he court ha[d] made no determination as to the truth or falsity of the allegedly defamatory statements").